# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RORY A. WESSEL, DONALD SCOTT,
FRANK PARRA, WALTER K. NEWTON,
PAULETTE MORA GONZALES, MARK
C. MORA, JANINE LaVIGNE,
RAYMOND LARGO, SR., MARK A.
GARCIA, SHERRY L. DURAN, RUDY
ARCHULETA, JR., JERRY ANAYA, SAM
AGUILAR, RUEBEN LUCERO, and all
others similarly situated,

        Plaintiffs,

        vs.                                              No. CIV 00-0065 LH/KBM-ACE

CITY OF ALBUQUERQUE; JIM BACA,
Mayor, City of Albuquerque; PEGGY
HARDWICK, Director Employee Relations,
City of Albuquerque; and LOCAL 624,
AMERICAN FEDERATION OF STATE,
COUNTY & MUNICIPAL EMPLOYEES,
AFL-CIO,

        Defendants.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on remand from the United States Court of Appeals for the Tenth Circuit and on the Plaintiffs' Motion for Partial Summary Judgment on Remand (Docket No. 142). The Court, having considered the pleadings submitted by the parties, the arguments of counsel, the applicable law, and otherwise being fully advised, finds that the Plaintiffs' motion is **well taken in part** and should be **granted in part and denied in part**.

## I.  Background

The Plaintiffs are employed by the City of Albuquerque, which is a Defendant here.  While most of their co-workers belong to the American Federation of State, County and Municipal Employees (AFSCME) Local 624, which is also a Defendant, the Plaintiffs are not members of the union.  The union has been recognized by the City as the exclusive bargaining representative of City employees for the purposes of collective bargaining, and represents the Plaintiffs in that capacity despite their decision not to join the union.

The Albuquerque City Council adopted a Fair Share Resolution, which allowed the union to deduct what are called fair share fees from non-members of the union once half of the members of the collective bargaining unit were shown to be members of the union.  Pls.' Complaint, Ex. 2. The City and the union then entered into a Memorandum of Understanding that put the fair share agreement into effect.  Pls.' Complaint, Ex. 3.  Fair share fees compensate the union for the cost of its collective bargaining activities, and amount to the non-member employee's proportionate share of the union's cost of negotiating and administering the collective bargaining agreement and adjusting grievances and disputes of bargaining unit employees.  Pursuant to the Memorandum of Understanding, these fees could not exceed seventy-five percent of union dues.  *Id.* at 2.  The Plaintiffs filed suit, alleging that the collection of these fees was unlawful and violated their rights in a number of respects to be discussed in detail below.  The suit sought declaratory and injunctive relief as well as damages.

This Court granted in part and denied in part the parties' cross-motions for summary judgment, entirely disposing of the suit.  Mem. Op. and Order (Docket No. 116), filed April 27, 2001. The parties appealed, raising six separate issues, and the Court of Appeals reversed this Court on two

of those issues. *Wessel v. City of Albuquerque*, 299 F.3d 1186, 1196-97 (10th Cir. 2002). It remanded for a hearing on one of those issues, and the Plaintiffs have moved for partial summary judgment on others.

## II. Issues Finally Resolved on Appeal

The Plaintiffs' first claim was that the union collected fair share fees without valid legislative authorization. This Court granted the Defendants' motion for summary judgment as to this claim, and the Court of Appeals affirmed that decision. *Id.* at 1192. Secondly, the Plaintiffs argued on appeal that this Court had abused its discretion by finding that a permanent injunction against future unlawful fair share notices and a refund of the entire fair share fee were not appropriate relief. The Court of Appeals affirmed this Court on that issue also. *Id.* at 1195. Finally, the Plaintiffs claimed that this Court abused its discretion in denying their motion to amend their complaint. The Court of Appeals affirmed on that issue as well. *Id.* at 1196. These issues are not in dispute here and need not be discussed further.

## III. Issue 2: Fair Share Notice Deficiencies

The Plaintiffs claimed that the union's original notice of the fair share fees to be deducted from non-members was deficient in several respects. Non-members must be given "sufficient information to gauge the propriety of the union's fee" so that they may object to the fee if they consider it improper. *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 306 (1986). The union in this case collected the fair share fees without including verification by an independent auditor in the notice. The Defendants admitted that the notice was insufficient, both because it

contained mathematical errors and because it did not properly indicate what portion of the fees went to each level of the union, but did not stipulate that it was also legally deficient in failing to include an auditor's verification. This Court granted the Plaintiffs' motion for summary judgment on this issue on the stipulated grounds, finding that the Plaintiffs' constitutional rights had been violated and awarded nominal damages in the amount of one dollar. Mem. Op. and Order (Docket No. 116), filed April 27, 2001.

The Plaintiffs nonetheless appealed, arguing that "the notice was further deficient because it did not include the full audit or the auditor's notes." *Wessel*, 299 F.3d at 1193. The Court of Appeals held that "Hudson clearly requires 'verification by an independent auditor,'" *id.*, *quoting Hudson*, 475 U.S. at 307, and that "Hudson contemplates, in the notice, 'a report expressing the auditor's opinion on the schedule.'" *Id.* at 1194. The Court concluded this section of its opinion by writing, "[b]ecause the Union already issued a revised notice including the auditor's materials and because the district court correctly awarded nominal damages to nonmembers based on the deficiencies in the notice, we hold that the nonmembers are entitled to no further relief." *Id.* at 1193.

The Plaintiffs have moved for a partial summary judgment on remand declaring that the notice violated their constitutional rights because it "did not include an independent auditor's report expressing an opinion on the schedules of expenses and explaining why the fees deducted were permissible." Pls.' Mot. for Partial Summ. J. on Remand (Docket No. 142) at 1. The parties disagree as to whether the language of the Court of Appeals' opinion permits the declaratory judgment now requested by the Plaintiffs.

The Plaintiffs argue that the Court of Appeals did not preclude this declaratory judgment on remand by the language quoted above because it was "issued in the context of the nonmembers'

arguments, rejected in the immediately following paragraphs of the Tenth Circuit's opinion, that this Court abused its discretion in refusing to enter a permanent injunction...and further erred in determining that a refund of the entire fair share fee was not required." Reply in Supp. of Pls.' Mot. for Partial Summ. J. on Remand (Docket No. 150) at 3. This argument is without merit. First of all, the immediately following paragraphs of the Tenth Circuit's opinion are a separate section of the opinion dealing with another of the Plaintiffs' claims on appeal entirely. Secondly, the Court of Appeals expressly prefaced its holding in its opinion. "*Because the Union already issued a revised notice including the auditor's materials* and because the district court correctly awarded nominal damages to nonmembers based on the deficiencies in the notice, we hold that the nonmembers are entitled to no further relief." *Wessel*, 299 F.3d 1194 (emphasis added).

The Court of Appeals was clear as to what is required of the union's notice as well as the appropriate relief to which the Plaintiffs were entitled because of the deficiencies in the notice. The Court of Appeals expressly found that the Plaintiffs had been accorded the relief to which they were entitled, namely a revised notice including the auditor's materials from the union, as well as a declaratory judgment that their constitutional rights had been violated and nominal damages from this Court. It also found that the Plaintiffs "are entitled to no further relief." *Id.* Their motion is therefore denied.

IV. Collection of Extra-Unit Fees

A.

The Plaintiffs challenged the amount of fair share fees collected by the union as having exceeded the constitutional limitations on such fees. "[A] local bargaining representative may charge

objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates." *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 524 (1991). However, "there must be some indication that the payment is for services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization." *Id.*

Both this Court and the Court of Appeals found that the language of the 1996 Fair Share Resolution and the 1997 Memorandum of Understanding adopted this constitutional standard. *Wessel*, 299 F.3d at 1196. This Court found that the union did not exceed the constitutional limitations on the types of expenses properly included in a fair share fee. The Tenth Circuit reversed that holding, writing,

> There is some evidence in the record that a portion of the fees collected went to the national Union to "[s]erve as exclusive representative in other bargaining units." Such fees would not inure to the benefit of the members of the local organization and their collection violates the principles expressed in *Lehnert*. We disagree with the district court's conclusion that the Union did not exceed the constitutional limitations on the types of expenses properly included in a fair share fee.

*Id.* The Court of Appeals ordered this Court "to hold a hearing to determine which fees are attributable to bargaining-related expenses in the unit as distinguished from those which do not inure to the benefit of the local bargaining unit." *Id.*

## B.

The Plaintiffs appear to have carried their burden of objecting to improper deductions. *Hudson*, 475 U.S. at 306 n.16 ("The nonmember's 'burden' is simply the obligation to make his objection known."); *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 239 (1977) ("[T]he requirement

in [Int'l Ass'n of Machinists v.] Street[, 367 U.S. 740, 771 (1961)] that dissent be affirmatively

indicated was satisfied by the allegations in the complaint that was filed.").  However, the Defendants

argue that under more recent precedent, the Plaintiffs have a greater burden, which they

failed to carry.

> "In stating that the nonmember's burden is simply the obligation to make his
> objection known, however, we did not hold that a federal-court plaintiff can file a
> generally phrased complaint, then sit back and require the union to prove the
> 'germaneness' of its expenditures without a clue as to which of its thousands of
> expenditures the objectors oppose.... With the *Hudson* notice, plus any additional
> information developed through reasonable discovery, an objector can be expected
> to point to the expenditures or classes of expenditures he or she finds questionable."

*Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 878 (1998) (internal quotation marks and citation

omitted), *cited in* Defs.' Post Hr'g Br. at 19.

That language is clearly inapplicable to this case, however.  The Court of Appeals has done

the Plaintiffs' work for them by identifying an entire category of expenditures for which the union

has impermissibly collected fees from non-members.  The Tenth Circuit held that fees expended for

the national union to serve as the exclusive bargaining representative for other bargaining units

"would not inure to the benefit of the members of the local organization and their collection violates

the principles expressed in *Lehnert*."  *Wessel*, 299 F.3d at 1196.  Even if that were not the case, the

Plaintiffs challenged that portion of their "fair share" fees that went to regional and national union

to serve as exclusive representative in other bargaining units in their complaint in a manner

sufficiently detailed to satisfy their burden of proof and shift it to the Defendants.  Pls.' Compl. at

15; Pls.' Compl., Ex. 5 at 4.

C.

The Defendants also argue that proving that the fair share fees the union collected are chargeable to non-members is beyond the scope of the Tenth Circuit's remand, Post-Hr'g Br. of Def. AFSCME Local 624 at 20, just pages after arguing that the very same language is merely "shorthand for the *Lehnert* standard for chargeability of extra-unit expenditures." *Id.* at 13. This Court is quite cognizant of the directions it received from the Court of Appeals, which are infinitely clearer than the Defendants' duplicity. The Tenth Circuit ordered this Court to "hold a hearing to determine which fees are attributable to bargaining-related expenses in the unit as distinguished from those which do not inure to the benefit of the local bargaining unit." *Wessel*, 299 F.3d at 1196. Fees which are attributable to bargaining-related expenses in the unit are chargeable to non-members, if the union proves that they are chargeable in all other respects. *Lehnert*, 500 U.S. at 524. Fees which do not inure to the benefit of the local bargaining unit are not chargeable to non-members. *Id.*

The Defendants' primary defense is that the entire fair share fee was properly collected from the Plaintiffs because it was placed into a pool of resources controlled by the unified membership structure of the union and potentially available to Local 624. This argument is misguided *ab initio*, as it flies in the face of the Tenth Circuit's holding. "We disagree with the district court's conclusion that the union did not exceed the constitutional limitations on the types of expenses properly included in a fair share fee." *Wessel*, 299 F.3d at 1196. The Court of Appeals plainly held that a portion of the fair share fees were unconstitutionally collected from the Plaintiffs, and directed this Court to determine which portion. This Court will not entertain arguments that require it to disregard the law of the case.

-8-

In light of the Tenth Circuit's opinion, the Defendants' argument can be construed as asserting only that those fees that did not finance the regional and national unions serving as the exclusive bargaining representative of locals other than Local 624 and were placed into a common fund controlled by the union were constitutionally collected from the Plaintiffs. To this extent, while they correctly identify the applicable line of precedent, the Defendants misconstrue the manner in which those cases apply to the facts of this case. The Defendants repeatedly argue that all that is required of the union to meet test of whether "services...may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization," *Lehnert*, 500 U.S. at 524, is that the fees collected from non-members be paid into a pool controlled by national union and that the union have a unified structure such that membership in a local makes one a member of the national union. The Defendants conclude that because AFSCME has such a unified membership structure, all fees collected from the Plaintiffs in this case could potentially inure to the benefit of Local 624 simply by virtue of the union's unified membership structure, making the fees collected chargeable to the non-member Plaintiffs.

The Defendants take this argument beyond reasonable bounds: "To summarize, where a national or state union establishes that fees collected were pooled to provide services available to all bargaining units, including the one paying the fee, all of the bargaining units have the potential of inurement required by *Lehnert*, and no further inquiry is necessary. No post-*Lehnert* case holds to the contrary." Post-Hr'g Br. of Def. AFSCME Local 624 at 7-8 (footnote omitted). *See also id.* at 15. That is simply not the law.[1] Any fees collected from union non-members must always be

---

[1] Pooling the fees into a common fund is most certainly not all that is required of the union, and the Defendants misrepresent the cases when they argue that it is. If pooling the collected fees into a fund controlled by the national union to which the locals belong was all that is required to allow fees to be charged to non-members of each local, the Supreme

chargeable fees collected to fund chargeable activities, regardless of the fund into which the fees are paid. *Lehnert*, 500 U.S. at 524.[2]

Furthermore, this argument is a *post hoc* rationalization that ignores the economic realities of the union's operation. The evidence adduced at the hearing held after remand indicated that the fair share fees were not collected to fund the union's future chargeable activities, but to pay for activities that had already been conducted. The union spent money collected from other sources, whatever they may be, on activities both chargeable and not chargeable to non-members. It then audited those expenses to determine whether or not they were chargeable. The costs of those expenses determined to be chargeable were totaled to determine the amount of the fair share fees to be charged to non-members, and the non-members were then charged fair share fees in that amount. Finally, those fees were collected from non-members and pooled into a common fund controlled by the national union.

"[A] local bargaining representative may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of state and national affiliates." *Lehnert*,

_____

Court would have effectively condoned an organized form of money laundering by which the union could collect fees from non-members, pool the fees and identify them as "potentially available" to the local to which the non-members belong, and then use the funds to finance the presidential candidacy of the candidate the union chose to endorse or any other non-chargeable activity. That is not the law.

    [2] The controlling language can be found in *Lehnert*, which the Defendants repeated cite themselves. "We therefore conclude that a local bargaining representative may charge objecting employees for their pro rata share of the costs *associated with otherwise chargeable activities* of its state and national affiliates, even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit." *Lehnert*, 500 U.S. at 524 (emphasis added). "*Hanson* and *Street* and their progeny teach that chargeable activities must (1) be 'germane' to collective-bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding 'free riders'; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." *Id.* at 519. "We conclude merely that the union need not demonstrate a direct and tangible impact upon the dissenting employer's unit." *Id.* at 524.
    This language is not case law "shorthand" as the Defendants attempt to convince the Court. Post-Hr'g Br. of Def. AFSCME Local 624 at 13-14. It is holding. It is the definition of a "chargeable activity" that the Defendants cannot seem to locate. It is the burden of proof the Defendants must meet in this case.

500 U.S. at 524.  The activities the union argues are chargeable have already occurred, though, and both their costs and the objecting employees' pro rata share of them have already been determined by the time the fees are collected.  The only thing that makes the pool of fair share fees collected from non-members a "pool of resources potentially available to the local," *id.* at 523, is the union's discretion regarding how the funds are spent.  Thus there is nothing, under the circumstances presented by the Defendants' argument, to distinguish chargeable and non-chargeable expenses.[3]

As the Tenth Circuit pointed out, *Wessel*, 299 F.3d at 1196, and the Defendants' witnesses confirmed, Hr'g Tr. at 29-30, 44, a portion of the fair share fees collected from the Plaintiffs to fund what the Defendants alleged were activities properly chargeable to non-members was actually spent to finance the national and regional union serving as the exclusive bargaining representative of locals other than Local 624.  In other words, a portion of the fair share fees was collected from the Plaintiffs to finance a non-chargeable expense, despite the unified structure of the union.  Those resources cannot be regained and then directed, or contemporaneously re-directed, to the benefit of Local 624.  Therefore, there is no conceivable manner in which the payment for those extra-unit services could ultimately inure to members of Local 624, irrespective of the nature of the union's organization.

The Defendants have not shown with any persuasiveness that the money in the common fund into which fees ostensibly chargeable to non-members were placed was spent only on activities that the union considered to be chargeable to non-members.  But even if the Court assumes that was

---

[3] Because money is by its nature fungible, earmarked revenue can easily be spent for a purpose other than that for which it was purportedly dedicated.  A dollar paid into a common fund, despite being dedicated for a particular purpose, increases the total amount in the fund by a dollar.  Paying that earmarked dollar into the fund frees another dollar to be spent for another, perhaps non-chargeable, purpose.  When the time to expend that earmarked dollar on its dedicated purpose comes, it cannot be separated from any other dollar.  Earmarking revenue therefore carries no particular significance, legal or economic.

the case for the purposes of this argument, that does not mean that the entirety of the fair share fee was in fact spent on chargeable activities or was properly collected from the non-member Plaintiffs. Indeed, the Court of Appeals expressly found that what the union considers to be a chargeable expense and what the Supreme Court considers to be a chargeable expense are two different things. *Wessel*, 299 F.3d at 1196.

Moreover, although it has not been established whether the fees were actually spent only on chargeable activities after they were collected, that fact is immaterial. The union presented evidence that money in the fund into which the pooled fees are paid was available to all locals, including Local 624. However, this is insufficient to pass constitutional muster where the fees were collected in order to recoup expenses that were not chargeable to non-members in the first place. *Wessel*, 299 F.3d at 1196. Earmarking the fees for a chargeable purpose does not purge their unconstitutional taint when the fees are collected to finance non-chargeable activities.

D.

In cases in which the plaintiff carries its burden of objecting to fees improperly deducted, which the Plaintiffs in this case have done, the Supreme Court has held that "the union bears the burden of proving the proportion of chargeable expenses to total expenses." *Lehnert*, 500 U.S. at 524. Beyond the three requirements to establish that a particular activity on which the union spends non-member fees is in fact chargeable, *Lehnert*, 500 U.S. at 519, the Court of Appeals expressly held that fees spent to finance the regional or national union serving as the exclusive bargaining representative of another local would not inure to the benefit of Local 624 and therefore is not chargeable to it. *Wessel*, 299 F.3d at 1196.

-12-

The union defended this issue by arguing that the fair share fees are paid into a common fund potentially available to Local 624. As discussed above, that is insufficient. The Defendants have also argued that the designation of exclusive bargaining representative is merely a formality which carries no legal significance. This argument, like the Defendants' first, urges the Court to disregard the opinion of the Court of Appeals. The Tenth Circuit held that fees spent to finance the national union serving as the exclusive bargaining representative of locals other than Local 624 "would not inure to the benefit of the members of the local organization and their collection violates the principles expressed in Lehnert." *Id.* Whatever serving as the exclusive bargaining representative of another local may require of the union, the Court of Appeals held that it is not a chargeable activity.

The Defendants assert that the experience the union's contract negotiators gain by bargaining on behalf of another local inherently benefits Local 624 because those officials become more effective with that experience. The Defendants contend that this makes funds expended for purposes through which union employees gain this experience chargeable to non-members. Beyond the aforementioned law of the case to the contrary, *id.*, this argument has no logical end and does not justify the union charging non-members for otherwise non-chargeable extra-unit activities. Every union official gains experience by participating in every union-related activity. If the union were permitted to charge non-members for activities in which a union member gained experience, every activity would be chargeable to non-members.

Finally, the Defendant's witnesses testified that the union does not maintain its records with a sufficient degree of detail to allow it to identify which expenditures went to any particular local. The converse of that argument is that the union cannot identify which expenditures did not inure to

the benefit of Local 624, and are therefore not chargeable to non-members of that local.  This is no defense at all.

First, this argument lacks credibility.  If the Defendants were in fact unable to discern what portion of the fair share fee went to serving as the exclusive bargaining representative of locals other than Local 624, how then do they determine the amount of the fair share fee?  According to the Defendants themselves, the amount of the fair share fee is the sum of the costs of the union's chargeable activities.  But, also according to the Defendants themselves, the union does not know the amount it spent on a particular activity it deemed chargeable to the Plaintiff non-members.  Did the union simply make up the amount of the fair share fee?  Did it guess as to what the amount of the fee should be?  The union was readily able to identify its chargeable activities when it billed non-members for them.  It seems particularly convenient that it is suddenly unable to identify which of the fees are those the Court of Appeals held were improperly collected and must now be refunded to the Plaintiffs.

Secondly, accounting inconvenience is an insufficient excuse to allow the union to continue to violate the First Amendment rights of the Plaintiffs.  It is the Defendants' burden at this stage to show what portion of the fees that they collected from the Plaintiffs were actually chargeable expenses as defined by the Court of Appeals.  *Lehnert*, 500 U.S. at 524.  The Defendants justifying why they cannot meet that burden only underscores the fact that they have not met it; it does not provide a defense for not meeting it.

E.

"[A]s always, the union bears the burden of proving the proportion of chargeable expenses to total expenses." *Id.* "[T]he union may not claim a right to receive from the non-union member full union dues covering *all expenses except those items which are ideological in purpose.* Instead, it may collect *only for those expenses affirmatively related to the bargaining agreement* because these constitute the only expenditures that, consistent with the First and Fourteenth Amendments under *Abood* and *Hudson*, the union may collect to prevent non-members' 'free riding.'" *Wessel*, 299 F.3d at 1196, *quoting Tierney v. City of Toledo*, 824 F.2d 1497, 1505 (6th Cir. 1987). It is the union's burden to show that the fair share fees were collected to finance "costs associated with otherwise chargeable activities." *Lehnert*, 500 U.S. at 524. This it has not done.

Any fees that the union collected from the Plaintiffs to fund either AFSCME Council 18 or AFSCME International serving as the exclusive bargaining representative of locals other than Local 624 are non-chargeable expenses and must be refunded to the Plaintiffs. *Wessel*, 299 F.3d at 1196. In addition, there are several activities related to serving as the exclusive bargaining representative of locals other than Local 624 that the union represented as chargeable expenses. Some of these, listed in the union's *Hudson* notice, undoubtedly relate to the union's bargaining on behalf of both Local 624 and other locals. Pls.' Compl., Ex. 5 at 2-5. The portion that relates to the union serving as the exclusive bargaining representative of locals other than Local 624 was not properly collected from non-members and must also be refunded. *Wessel*, 299 F.3d at 1196.

Beyond this, the Defendants may only collect from the Plaintiffs that amount equal to each Plaintiffs' pro rata share of costs associated with activities they prove by a preponderance of the evidence to be germane to collective-bargaining activity, to be justified by the government's vital

-15-

policy interest in labor peace and avoiding free riders, and to not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop. *Lehnert*, 500 U.S. at 519, 524. The Defendants have failed to even address what proportion of the fees collected actually went to chargeable activities. They have instead argued, contrary to the holding of the Court of Appeals, *Wessel*, 299 F.3d at 1196, that the entire fair share fee was properly collected from non-members and that pooling those fees made them chargeable in their entirety.

The Court therefore has no choice but to find that the Defendants have failed to satisfy their burden of proof with regard to any of the fair share fees collected from the Plaintiffs. Again, the Defendants cannot show what portion went to other locals and, conversely, have not shown what portion went to expenses related to bargaining on behalf of Local 624. In the absence of proof, the Court must require that the fair share fees be refunded in their entirety.[4]

## V.  Constitutionality of the Indemnification Agreement

The 1997 Memorandum of Understanding between the City and the union contained an indemnification clause by which the union agreed to "indemnify and hold the City harmless from

---

[4] It should be pointed out, as the Court also noted in its Memorandum Opinion and Order granting the Plaintiffs' Motion for Class Certification (Docket No. 133 in No. CIV 01-0531 LH/WDS), that this is not the same relief precluded by the Court of Appeals in its opinion in this case. In *Wessel*, the Tenth Circuit found that it was not appropriate to refund the entire fair share fee to the Plaintiffs as a remedy for the inadequate fair share notice. *Wessel*, 299 F.3d 1194-95 ("A union's *violation of procedural requirements* for the collection of fair share fees does not entitle nonmembers to a 'free ride....'") (emphasis added). In another, distinct claim for relief, the Plaintiffs alleged that the fair share fees were collected for an improper purpose, and the Court of Appeals agreed. *Id.* at 1196 ("We disagree with the district court's conclusion that the Union did not exceed the constitutional limitations on the types of expenses properly included in a fair share fee."). The Court of Appeals remanded the case for this Court to hold a hearing to determine which portion of the fees was properly collected. *Id.* The Defendants bear the burden on remand of proving that the fees were collected for a lawful purpose. *Lehnert*, 500 U.S. at 519, 524. Because they failed to carry their burden, indeed failed to even address which portions of the fee were collected for chargeable activities, a refund of the fee in its entirety is appropriate and was not forbade by the Court of Appeals.

any...claims involving fair share payments under this MOU." Pls.' Compl., Ex. 3 at 3. The Plaintiffs
challenged the indemnification clause as unconstitutional and void as against public policy. This
Court "read the indemnification clause as protecting the City from any violations by the Union and
for which the City can do little, if anything, to detect and prevent," *Wessel*, 299 F.3d at 1197, and
granted the Defendants' motion for summary judgment on this issue.

The Court of Appeals reversed that judgment and held that the indemnification provisions
were void as contrary to public policy. *Id.* at 1199. It wrote,

> We find the district court's interpretation of the indemnification provisions to be
> unreasonable. There is nothing in the text of the provisions to suggest that the City
> is to be indemnified only for "violations by the Union...for which the City can do
> little, if anything, to detect and prevent." Rather the City is to be indemnified for any
> liability--including costs and fees--arising from any claims "involving fair share
> payments." It seems clear that this broad scope encompasses not only liability
> resulting from the Union's mistakes, but also from the City's failure to fulfill its own
> obligations.

*Id.* at 1197.

The Plaintiffs have moved for a partial summary judgment on remand declaring that "the
indemnification clauses of the 1997 Memorandum of Understanding and the 2000-2003 Agreement
are void as against public policy and unenforceable." The judgment of the Court of Appeals was,
"[a]ccordingly, we reverse the district court's ruling and hold that the indemnification provisions are
void as contrary to public policy." *Id.* at 1199. Why the Plaintiffs now seek a declaratory judgment
from this Court that merely reiterates the language of the Court of Appeals' decision is not clear.
However, it is entirely unnecessary given that language, and this issue is not otherwise before the
Court. More importantly, this Court has no more authority to declare the indemnification clauses
void and unenforceable than to declare them valid and enforceable. The Court of Appeals held that

the clauses were void. *Id.* That is the law of the case and binding on this Court and these parties. The Plaintiffs' motion for partial summary judgment on remand is moot, and is denied as such.

The Plaintiffs have also requested that the indemnification clauses be stricken from the 2000-2003 Collective Bargaining Agreement, and the Defendants do not oppose an order striking the clauses. The Court of Appeals held that the indemnification provisions were void but did not order them stricken, although that follows logically from its holding. As the Defendants have conceded that the Plaintiffs are entitled to this judgment, there is no genuine issue of material fact. Because the Court of Appeals declared the clauses void, they should be stricken as a matter of law. The Plaintiffs' motion on this point is granted.

Finally, the Plaintiffs have sought a partial summary judgment on remand enjoining the Defendant City, pursuant to FED. R. CIV. P. 65, from accepting any indemnification from AFSCME Local 624, New Mexico AFSCME Council 18, and/or AFSCME International, and requiring the City to repay the indemnification it has already received. "The primary function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties, in order to preserve the power to render a meaningful decision on the merits." *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992).

This case stands in stark contrast to the typical suit seeking a preliminary injunction. The Plaintiffs seek not to preserve the status quo, but to reverse it. This opinion will decide the case on its merits, if only until it is again appealed, not preserve the power to do so. The Court therefore finds that a permanent injunction is the appropriate remedy at this stage of the litigation.

"Ordinarily, a party seeking a preliminary injunction must satisfy a four-factor test in order to be awarded such temporary relief. The requesting party must demonstrate (1) that it has a

-18-

substantial likelihood of prevailing on the merits; (2) that it will suffer irreparable harm unless the preliminary injunction is issued; (3) that the threatened injury outweighs the harm the preliminary injunction might cause the opposing party; and (4) that the preliminary injunction if issued will not adversely affect the public interest." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). "The standard for a permanent injunction is essentially the same as the standard for a preliminary injunction, except that the plaintiff must actually succeed on the merits." *Tyler v. Kansas Lottery*, 14 F. Supp. 2d 1220, 1223 (D. Kan. 1998).

As discussed previously with regard to the declaratory judgment, the Plaintiffs have already succeeded on the merits. The Court of Appeals held that the indemnification clause of the Memorandum of Understanding was void as contrary to public policy. *Wessel*, 299 F.3d at 1197. The Plaintiffs are obviously correct in their assertion that the "[o]mission of such an injunction would permit the City to evade the Tenth Circuit's holding that '*[b]oth* parties to a fair share agreement must be held accountable for their responsibility to see that Hudson's commands are followed.' *Wessel*, 299 F.3d at 1198 (emphasis added) (quoting W*eaver*, 970 F.2d at 1538)." Br. in Supp. of Pls.' Mot. for Partial Summ. J. on Remand at 14-15.

The Defendants argue that because "[n]either this Court nor the Court of Appeals found that the City of Albuquerque committed any constitutional violation in connection with the collection of fees in this case," Joint Resp. of Defs. to Pls.' Mot. for Partial Summ. J. at 4, neither an injunction prohibiting future indemnification nor requiring the indemnification already paid to be reimbursed is appropriate. The Court of Appeals, however, did not hold that the indemnification clause was void as violative of the First Amendment. It held that the provision was void as contrary to the public policy embodied in the First Amendment.

-19-

"That a public employer has certain obligations within the fair share deduction framework established by the courts is beyond dispute," *Wessel*, 299 F.3d at 1197, and is not disputed here.  "If the City consistently made no effort to ensure that the Union's fair share procedures complied with Hudson, such failure would likely be cognizable under [42 U.S.C.] § 1983 and covered by the indemnification provision."[5]  *Id.* at 1199 n.4.  Therefore, as was the case in *Weaver v. Univ. of Cincinnati*, 970 F.2d 1523 (6th Cir. 1992), a "clause that relieves the employer of all consequences for its failure to assume and conscientiously carry out its duties, including even the cost of defending legal actions, is against public policy."  *Id.* at 1538.

The Court of Appeals found that the indemnification clause relieved the Defendant City of any consequences, even costs and fees, for failing to carry out its constitutional duties imposed by the First Amendment, and therefore violated the public policy embodied therein.  Finding the Defendant City had actually violated the Plaintiffs' First Amendment rights is not a necessary predicate to that holding, and the Defendants are correct that the Tenth Circuit did not so hold.  That, however, is entirely beside the point.  The Court of Appeals held that the indemnification clause was void because it insulated the Defendant City from any risk associated with failing to protect the Plaintiffs' First Amendment rights.  The City therefore had no incentive to do so.

---

[5] The Defendants argue that this language shows that the Court of Appeals did not hold that the union indemnifying the City for attorney's fees in this case would violate public policy, because the Tenth Circuit, in this passage, demonstrates the indemnification clause's flaw as it applies to a hypothetical situation. Joint Resp. of Defs. to Pls.' Mot. for Partial Summ. J. at 7.  First of all, it is not at all clear that the instance described by the Court of Appeals is hypothetical or does not in fact apply to this case.  The Plaintiffs have not alleged First Amendment violations by the Defendant City, and the issue will therefore not be decided here.  However, it should be clear, inasmuch as the legally inadequate fair share notice and the collection of the fair share fees violated the Plaintiffs' First Amendment rights, that the City could not possibly have fulfilled its obligation to "provide procedures that minimize that impingement [on nonmembers' First Amendment rights] and...facilitate a nonunion employee's ability to protect his rights." *Hudson*, 475 U.S. at 307 n.20.  Moreover, the Tenth Circuit's holding was not conditional on some hypothetical contingency materializing or otherwise irresolute in any way.  The Court of Appeals wrote, "[a]ccordingly, we reverse the district court's ruling and hold that the indemnification provisions are void as contrary to public policy." *Wessel*, 299 F.3d at 1199.  The Defendants' search for ambiguity where none exists is futile.

The Defendants argue that the indemnification clause "would not operate to relieve the City of liability for any constitutional violation on its part." Joint Resp. of Defs. to Pls.' Mot. for Partial Summ. J. at 8. Of course, the opposite is true, and was the basis for the Tenth Circuit's holding. "...[T]he City is to be indemnified for any liability--including costs and fees--arising from any claims 'involving fair share payments.' It seems clear that this broad scope encompasses not only liability resulting from the Union's mistakes, *but also from the City's failure to fulfill its own obligations.*" *Wessel*, 299 F.3d at 1197 (emphasis added).

The Defendants' attempts to construe the Tenth Circuit's opinion in a manner that would not require the relief the Plaintiffs seek miss the point entirely. Even if, as the Dependants argue, the Court of Appeals did not find that the Defendant City had breached any constitutional duty or struck down the indemnification clause only on the ground of overbreadth, it held that the clause was void. The Defendant City nonetheless sought indemnification pursuant to the clause, and the Defendant union provided it. The Court therefore finds that the Plaintiffs have succeeded on the merits of this issue, and the first factor weighs in favor of granting the injunction.

The second factor to consider is whether the party seeking the injunction will suffer irreparable harm unless the injunction is issued. *Prairie Band of Potawatomi Indians*, 253 F.3d at 1246. It seems clear that the Plaintiffs have suffered irreparable injury, in the form of a violation of their constitutional rights, in part due to the City's failure to fulfill its obligation to protect them. So long as the City continues to receive the indemnification the Tenth Circuit found to violate public policy, the Plaintiffs will continue to suffer irreparable injury, namely the risk that their constitutional rights will again be violated due to the City's failure to fulfill "their responsibility to see that Hudson's commands are followed." *Wessel*, 299 F.3d at 1198.

-21-

The third factor is whether the threatened injury outweighs the harm the injunction might cause the opposing party. *Prairie Band of Potawatomi Indians*, 253 F.3d at 1246. The only "harm" the opposing party would suffer here is that it would have to pay it own attorney's fees and costs. Of course, that is no harm at all, and is clearly insufficient to overcome the public policy that nullified the indemnification clause in the first place. Given the significance of that policy in protecting the Plaintiffs' First Amendment rights, it is unlikely that the Defendant City would be able to show that any harm is might suffer would be sufficient to overcome it.

The fourth factor is whether the injunction, if issued, will not adversely affect the public interest. *Id.* The Court of Appeals held that the indemnification clause was void because it violated public policy. *Wessel*, 299 F.3d at 1197. It would therefore adversely affect the public interest not to grant the injunction and allow the Defendant City to continue violating that policy. Granting the injunctive relief the Plaintiffs seek will bolster the public interest by promoting the public policy embodied in the First Amendment that public employers take action to minimize the infringement of the constitutional rights of their employees that is inherent in the agency shop and allow their employees to protect their own rights. *Hudson*, 475 U.S. at 307 n.20.

The Plaintiffs' motion on this claim will therefore be granted. Any indemnification paid to the City by the union pursuant to the indemnification clause in the Memorandum of Understanding must be refunded forthwith. The City is hereby permanently enjoined from accepting future indemnification pursuant to the indemnification clause.

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment requesting a declaratory judgment that their constitutional rights were violated by the union's 1999 notice is **denied**.

**IT IS FURTHER ORDERED** that all fair share fees the Defendants collected from the Plaintiffs during the pertinent time period be refunded to them forthwith.

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment requesting a declaratory judgment that the indemnification clauses of the Memorandum of Understanding and Collective Bargaining Agreement are void as contrary to public policy is **denied**.

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment requesting that the indemnification clauses be stricken from the 2000-2003 Collective Bargaining Agreement is **granted**.

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment enjoining the Defendant City from accepting any indemnification from AFSCME Local 624, AFSCME Council 18, and/or AFSCME International, and requiring the City to repay the indemnification it has already received is **granted**.

**IT IS SO ORDERED.**

_____

**SENIOR UNITED STATES DISTRICT JUDGE**

-23-